IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| COURTNEY B. MATHEWS #232626, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) NO. 3:23-cv-00644 |
|  | ) JUDGE RICHARDSON |
| ROBERT WILEY WEDEMEYER, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Courtney Mathews is a state prisoner pursuing a direct appeal in his state criminal case. He filed a civil complaint in this Court and paid the filing fee. As explained below, this Court will not exercise jurisdiction over this case based on the *Younger* abstention doctrine, and Plaintiff also lacks standing to pursue some of his claims.[1] Accordingly, this case will be dismissed without prejudice and Plaintiff's pending motions will be denied as moot.

## I. Background[2]

Plaintiff is serving a life sentence. (Doc. No. 1 at 14.) He is currently pursuing a direct appeal in the Tennessee Court of Criminal Appeals (TCCA). (*Id.* at 14–15.) The TCCA granted

---

[1] *Younger* abstention and standing are both issues that the Court can raise sua sponte. *See Hill v. Snyder*, 878 F.3d 193, 206 n.3 (6th Cir. 2017) (*Younger*); *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 983 (6th Cir. 2012) (standing). And both issues are properly considered as questions of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Doe v. Lee*, No. 3:21-cv-00809, 2022 WL 1164228, at *3 (M.D. Tenn. Apr. 19, 2022) (*Younger*); *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017) (standing).

[2] The Court is considering whether to exercise jurisdiction based on the face of the pleadings. The analysis of subject-matter jurisdiction that follows, therefore, is facial rather than factual. *See Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (discussing distinction between facial challenges and factual challenges to subject-matter jurisdiction, explaining that the former "questions merely the sufficiency of the pleading" while the latter requires a court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist"). As such, this Background is drawn only from the allegations in the Complaint and the attached exhibits, which the Court accepts as true. *See id.* ("When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss.").

him permission to represent himself, and when Plaintiff filed his appellate brief, he requested oral argument under Tennessee Rule of Appellate Procedure 35 (hereinafter, "Rule 35"). (*Id.* at 15.)

As relevant to the Complaint, Rule 35(g) explains that two things may happen if a party fails to appear for oral argument: (1) the party who *does* appear will still be able to participate in oral argument; and (2) the party who *does not* appear (if that is the party that requested oral argument) *may* be assessed "reasonable costs incurred by the party who *does* appear," which "may include a reasonable attorney's fee." (*Id.* at 16, 28 (emphasis added).)

The TCCA denied Plaintiff's request for oral argument on June 6, 2023. (*Id.* at 15.) One week later, Plaintiff filed a civil complaint in this Court[3] against the four judges of the TCCA's Middle Section and the five justices of the Tennessee Supreme Court asserting claims covering two issues: who is permitted to participate in oral argument in his appeal (*id.* at 25–35 (hereinafter, "Participation Claims")), and potential financial sanctions that (according to him) could be imposed against him for failing to appear for oral argument after requesting it. (*Id.* at 18–25, 33–35 (hereinafter, "Financial Sanction Claims").) Plaintiff requests declaratory and injunctive relief, seeking to secure his participation in oral argument before the TCCA, prevent the State from participating in oral argument without him, and ensure that he is not financially sanctioned for requesting oral argument and then failing to appear pursuant to Rule 35(g). (*Id.* at 35–36.)

## II. General Principles: Inquiry Into Subject-matter Jurisdiction

For a federal court, "[s]ubject matter jurisdiction is always a threshold determination." *Doe*, 2022 WL 1164228, at *4 (quoting *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537

---

[3] Because Plaintiff is a pro se prisoner, the Court considers the Complaint filed on the date he signed it—June 13, 2023. (Doc. No. 1 at 36); *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citations omitted) ("[A] pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court[,] . . . with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint.").

(6th Cir. 2007)). The Court may raise the question of whether it has subject-matter jurisdiction without a motion being filed. *See Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006) (quoting *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005)). And if the Court answers that question in the negative—that is, if the Court "determines at any time that it lacks subject-matter jurisdiction"—then the Court "must dismiss the action." Fed. R. Civ. P. 12(h)(3).

As noted in a footnote above, challenges to a federal district court's subject-matter jurisdiction "fall into two general categories: facial attacks and factual attacks." *Mucerino v. Martin*, No. 3:21-cv-00284, 2021 WL 5585637, at *3 (M.D. Tenn. Nov. 30, 2021). Here, the Court is considering only the sufficiency of the pleading, so this is a facial analysis of subject-matter jurisdiction, whereby the Court "takes the allegations in the complaint as true." *Doe*, 2022 WL 1164228, at *4 (citing *Gentek*, 491 F.3d at 330). And Plaintiff, as "the party invoking federal jurisdiction[,] has the burden to prove that jurisdiction." *Doe*, 2022 WL 1164228, at *4 (citing *Global Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015); *Golden v. Gorno Bros.*, 410 F.3d 879, 881 (6th Cir. 2005)).

### III. ANALYSIS

#### A. <u>*Younger* Abstention</u>

"[L]ower federal courts are courts of limited jurisdiction and possess only those powers granted to them by Congress." *Baze v. Parker*, 632 F.3d 338, 341 (6th Cir. 2011) (citing *Finley v. United States*, 490 U.S. 545, 550 (1989)). "[F]ederal courts," therefore, "must be reluctant to infer that Congress has expanded their jurisdiction"—and even more so "where an expansion of jurisdiction would implicate federalism concerns." *Id.* (citations omitted). "Federalism concerns are particularly strong in criminal matters, and, absent a clear directive from Congress or the Constitution, a federal court should be loath to assume jurisdiction to interfere with state criminal

proceedings, including postconviction proceedings." *Id.* at 341 (collecting cases, including *Younger v. Harris*, 401 U.S. 37, 43–44 (1971)).

The *Younger* abstention doctrine is a recognition of this principle. It reflects the "desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity." *Doe v. Univ. of Kentucky*, 860 F.3d 365, 368 (6th Cir. 2017) (citing *Younger*, 401 U.S. at 44). Under *Younger*, a federal court should abstain from exercising jurisdiction where: 1) there is an ongoing state judicial proceeding; 2) the proceeding implicates important state interests; and 3) there is an adequate opportunity to raise constitutional challenges in the state proceeding. *Hill v. Snyder*, 878 F.3d 193, 206 (6th Cir. 2017) (citing *Squire v. Coughlan*, 469 F.3d 551, 555 (6th Cir. 2006)).

Accepting the allegations in the Complaint as true, *Younger* abstention is appropriate with respect to this entire case, including Plaintiff's Participation Claims and his Financial Sanction Claims. First, the direct appeal proceedings in Plaintiff's state criminal case are currently ongoing; indeed, Plaintiff's goal in this case is for this Court to exercise authority over his direct appeal by ostensibly dictating who can participate in oral argument and blocking Plaintiff from receiving a potential financial sanction. Second, Tennessee's interest in the administration and enforcement of its criminal laws is paramount. *See Younger*, 405 U.S. at 51–52 ("Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts."); *Parker v. Turner*, 626 F.2d 1, 8 (6th Cir. 1980) (citing *Younger* and *O'Shea v. Littleton*, 414 U.S. 488 (1973) ("*Younger* established a near-absolute restraint rule when there are pending state criminal proceedings. *O'Shea*, in effect, extends this near-absolute restraint rule to situations where the relief sought would interfere with the day-to-day conduct of state trials.")). And third, "Tennessee courts

provide a criminal defendant with an adequate opportunity to raise constitutional challenges." *Doe*, 2022 WL 1164228, at *6 (citations and internal quotation marks omitted); *see also Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) ("Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights."). Accordingly, the three criteria for applying *Younger* abstention are met here.

There are, however, exceptions to the *Younger* abstention doctrine, including: 1) bad faith or harassment; 2) "flagrant unconstitutionality of the statute or rule at issue," *Doe*, 860 F.3d at 371 (citing *Fieger v. Thomas*, 74 F.3d 740, 750 (6th Cir. 1996)); and 3) "where there is 'an extraordinarily pressing need for immediate federal equitable relief.'" *Aaron v. O'Connor*, 914 F.3d 1010, 1019 (6th Cir. 2019) (quoting *Kugler v. Helfant*, 421 U.S. 117, 125 (1975)). But these exceptions "have generally been interpreted narrowly by the Supreme Court and the Sixth Circuit." *Doe*, 2022 WL 1164228, at *6 (citing *Gorenc v. City of Westland*, 72 F. App'x 336, 338–39 (6th Cir. 2003)).

Again accepting Plaintiff's allegations as true, the Complaint does not support the application of a *Younger* exception. First, "[t]he bad faith/harassment exception to *Younger* abstention 'is extremely narrow and applies only in cases of proven harassment or prosecutions undertaken without hope of obtaining valid convictions.'" *Doe*, 2022 WL 1164228, at *8 (quoting *McNatt v. Texas*, 37 F.3d 629 (5th Cir. 1994)). Plaintiff's allegations do not present the type of "extreme facts" implicating this exception. *See id.* (citations and internal quotation marks omitted ("Courts limit findings of bad faith to extreme facts, such as when Texas city police officers repeatedly engaged in searches and seizures they knew to be unlawful, or when a county prosecutor office filed twelve separate actions . . . in order to harass the plaintiffs and drain them of all their

financial resources.")). Second, the "flagrant unconstitutionality" exception likewise "is a high bar," requiring "the challenged policy to be facially unconstitutional 'as well as [unconstitutional in application.'" *Watkins v. Ohio Dep't of Educ.*, No. 2:21-cv-04482, 2022 WL 672565, at *7 (S.D. Ohio Mar. 7, 2022) (quoting *Doe*, 860 F.3d at 371). And although Plaintiff alleges that the TCCA's application of Rule 35(g) is unconstitutional "as applied to him" (Doc. No. 1 at 4), he makes no allegation or argument that Rule 35(g) is facially unconstitutional. (*See id.* at 22 (alleging that Rule 35(g) "is both sensible and rational[] and therefore[] serves a legitimate government interest when applied to non-incarcerated litigants").)

"The last exception to *Younger* abstention—'an extraordinarily pressing need for immediate equitable relief'—is reserved for situations where 'the federal court concludes that the state proceedings are inadequate because there is no available state forum for the plaintiff's constitutional claims.'" *Doe v. Lee*, No. 3:20-cv-00610, 2020 WL 4926607, at *5 (M.D. Tenn. Aug. 21, 2020) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 107–08 (1975)). Liberally construing the Complaint in Plaintiff's favor, he makes two arguments that implicate this exception. First, he alleges that he cannot "bring any of his U.S. Constitutional claims" in a state trial court because the order denying his request for oral argument on direct appeal was issued by a judge of the TCCA and is therefore binding on the lower courts. (Doc. No. 1 at 12.) And second, Plaintiff alleges that "there are no appellate procedural rules or statutory provisions that would allow Plaintiff to challenge the arbitrary imposition of financial sanctions by any of the defendants." (*Id.*)

The Court is unpersuaded by either argument. With his first argument, Plaintiff is essentially asking the Court to find that *Younger* carries no weight in federal court when the parallel state court proceedings are appellate in nature because lower state courts are bound by a higher state court's order. Such a finding would be inconsistent with well-established precedent providing

that *Younger* "applies to state appellate proceedings as well as state trials." *See Foster v. Kassulke*, 898 F.2d 1144, 1145 (6th Cir. 1990) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) (holding that abstention from federal intervention in state direct appeal proceedings was appropriate)).

As to Plaintiff's second argument, the Court notes that it is made in support of just his Financial Sanction Claims (and not his Participation Claims). Beyond the general proposition, noted above, that "Tennessee courts provide a criminal defendant with an adequate opportunity to raise constitutional challenges," *Doe*, 2022 WL 1164228, at *6 (citations and internal quotation marks omitted), Plaintiff's alleged concern about financial sanctions does not justify application of this exception. Plaintiff makes the conclusory allegation that no state procedures exist to challenge any future financial sanctions under Rule 35(g), but Plaintiff apparently made no effort to secure the relief sought in this case in state court before filing in federal court. And the Supreme Court has held that "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). So, Plaintiff has not carried his burden of demonstrating an absence of a state forum in which to litigate his Financial Sanction Claims. Moreover, the extraordinarily-pressing-need exception may potentially apply only where a plaintiff faces "great, immediate, and irreparable harm." *Moore v. Sims*, 442 U.S. 415, 433 (1979) (citing *Kugler*, 421 U.S. 117). But for essentially the same reasons that Plaintiff lacks standing to pursue the Financial Sanction Claims, discussed below, the Court cannot find that Plaintiff faces great and immediate harm from a potential financial sanction he may or may not receive for failing to appear at a potential oral argument that may or may not occur.

Finally, apparently anticipating that *Younger* may present a barrier to litigating this case (in federal court), Plaintiff included in the Complaint some argument directly addressing *Younger*. Plaintiff alleges that *Younger* abstention is inappropriate because he is not asking the Court to enjoin the pending state proceedings and the relief he is seeking is not "relevant" to his underlying convictions or the substantive issues presented in his direct appeal. (Doc. No. 1 at 7–8.) But *Younger* abstention is appropriate not just where the relief sought would *completely enjoin* a state proceeding, but also where federal court action would *interfere* with it. *See Younger*, 401 U.S. at 43 (discussing the federal policy "to permit state courts to try state cases free from interference by federal courts"); *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998) (quoting *Samuels v. Mackell*, 401 U.S. 66, 72 (1971) (noting that *Younger* abstention is appropriate in declaratory judgment actions, as well as actions seeking injunctive relief, "because they involve 'precisely the same interference with and disruption of state proceedings' as an injunction"). The Supreme Court has "recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986). Accordingly, "the Sixth Circuit has held that *Younger* [generally] bars 'even minimal interference with . . . a state proceeding.'" *Stevenson v. Motors*, No. 5:16-CV-421-KKC, 2017 WL 512750, at *3 (E.D. Ky. Feb. 7, 2017) (quoting *J. P. v. DeSanti*, 653 F.2d 1080, 1084 (6th Cir. 1981)). Plaintiff is asking this Court to step in and administer part of a direct appeal in a state criminal case that would normally be administered by the TCCA, which would easily constitute the minimal level of interference required to apply *Younger* abstention. *See Watson v. Kentucky*, Civ. No. 15-21-ART, 2015 WL 4080062, at *2 (E.D. Ky. July 6, 2015) (quoting *Parker*, 626 F.2d at 8 ("'*Younger*

established a near-absolute restraint rule when there are pending state criminal proceedings'—even when the interference would not actually halt the prosecution altogether.")).

To sum up, the three requirements for *Younger* abstention are met, and none of the exceptions to abstention apply. Based on the principles of federalism, comity, and equity embodied in the *Younger* abstention doctrine, the Court will not exercise jurisdiction over Plaintiff's case, which represents an improper attempt for a federal court to interfere with and administer part of a pending direct appeal in a state criminal case. And because Plaintiff sought only equitable relief in this case, the Court will exercise its discretion to dismiss it without prejudice. *See Nimer v. Litchfield Twp. Bd. of Trustees*, 707 F.3d 699, 702 (6th Cir. 2013) (citing *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006) ("If the plaintiffs seek equitable relief, such as an injunction, then the district court may exercise its discretion and decide whether to dismiss the case.")); *Aaron*, 914 F.3d at 1020–21 (citations omitted ("A dismissal based on *Younger* is without prejudice.")).

B. <u>Standing</u>

With regard to Plaintiff's Financial Sanction Claims, it is also clear from the face of the pleadings that Plaintiff lacks standing. "Standing 'ensure[s] that federal courts do not exceed their authority' and 'limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "[A]s the party invoking federal jurisdiction," Plaintiff has the burden of establishing standing by alleging facts demonstrating that he: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citations omitted). "Standing is to be determined as of the time the

complaint is filed." *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004) (citation and internal quotation marks omitted).

Plaintiff has not adequately alleged that he suffered an injury in fact related to the Financial Sanction Claims as of the time he filed the Complaint., To be clear, Plaintiff does not allege that he has already been sanctioned; rather, he alleges that he is "subject to the arbitrar[y] imposition of punitive financial sanctions" in the future. (Doc. No. 1 at 5.) But an injury in fact requires that a plaintiff "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "A threatened injury must be 'certainly impending to constitute injury in fact,' and 'allegations of possible future injury are not sufficient.'" *In re Teixeira*, 844 F. App'x 847, 854 (6th Cir. 2021) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 411 (2013)). "And courts are 'reluctan[t] to endorse standing theories that rest on speculation about the decisions of independent actors.'" *Id.* (quoting *Clapper*, 568 U.S. at 414).

Plaintiff's concern about a potential financial sanction in the future is simply too speculative to plausibly suggest a cognizable injury in fact. The Court accepts as true that the TCCA denied Plaintiff's request for oral argument under Rule 35. The Court likewise accepts as true that Rule 35(g) permits a state appellate court to assess a financial sanction against a party who requests and then does not appear for oral argument. But Plaintiff's theory of cognizable injury would then require the Court to make several unwarranted leaps of logic that the Court will not make, such as: that the TCCA will actually hold oral argument (when the Complaint contains no indication that oral argument has been scheduled);[4] that the TCCA would consider Plaintiff to

---

[4] Tennessee appellate courts can and do decide cases without oral argument. *See* Tenn. R. App. P. 35(h); *Alexandria-Williams v. Goins*, No. W2018-01024-COA-R10-CV, 2018 WL 3198799, at *1 n.1 (Tenn. Ct. App. June 26, 2018) (finding oral argument to be unnecessary).

be the requesting party for any oral argument that it holds (when Plaintiff's request for oral argument was denied); that the TCCA would consider Plaintiff's absence from any oral argument it holds to be a "failure to appear" for purposes of Rule 35(g) (when Plaintiff would have been prevented from appearing due to a court ruling); and that the TCCA would actually sanction Plaintiff under Rule 35(g) (when the decision to issue a Rule 35(g) sanction is entirely within the court's discretion).

Plaintiff alleges that being sanctioned under Rule 35(g) "is not some far off theoretical possibility" for him, in light of the "fines, fees, and litigation taxes" that have been routinely imposed by the State of Tennessee against him and other incarcerated pro se litigants in the past. (*See* Doc. No. 1 at 20–21.) But Plaintiff has not pointed to a single example of another incarcerated pro se litigant receiving *a Rule 35(g) sanction* in particular—much less when such a litigant's request for oral argument was denied. (*See id.* at 21 (alleging that Plaintiff was "doubled [sic] charged for records"); Doc. No. 1-7 (documentation of fees and costs levied against other incarcerated pro se litigants with no apparent connection to Rule 35(g).) So, what Plaintiff has alleged with regard to his Financial Sanction Claims is, at most, a "mere exposure to a vague risk of possible harm." "[W]ithout more," that "is insufficient for Article III standing." *Saleh v. Barr*, 801 F. App'x 384, 392 (6th Cir. 2020) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). This lack of standing provides an additional basis, aside from *Younger* abstention, for the Court to dismiss Plaintiff's Financial Sanction Claims without prejudice. *See Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x 6, 11 (6th Cir. 2018) ("[A] dismissal for lack of standing is without prejudice.").

## IV. Conclusion

For these reasons, the Court abstains from exercising jurisdiction in this case pursuant to the *Younger* abstention doctrine, and Plaintiff lacks standing to pursue his Financial Sanction Claims. Accordingly, this case is **DISMISSED without prejudice**, and Plaintiff's pending motions (Doc. Nos. 3, 7) are **DENIED as moot**. The Court also **CERTIFIES** that any appeal in this matter would not be in good faith, so Plaintiff will not be granted leave to proceed as a pauper on any appeal. 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE